# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IRON HILL BREWERY OF REHOBOTH ) 
BEACH, LLC, a Delaware Limited Liability ) 
Company, ) 
           ) 
            Plaintiff, )    C.A. No. N18C-12-100 MMJ 
           ) 
          v. ) 
           ) 
COASTAL STATION DEVELOPMENT ) 
CO., LLC, a Delaware Limited Liability ) 
Company Assignee of COASTAL ) 
STATION, LLC, a Delaware Limited ) 
Liability Company, ) 
           ) 
           Defendant. ) 
           ) 
COASTAL STATION DEVELOPMENT ) 
CO., LLC, a Delaware Limited Liability ) 
Company, ) 
           ) 
           Third-Party Plaintiff, ) 
           ) 
          v. ) 
           ) 
IRON BREWERY, LLC, a Delaware ) 
Limited Liability Company, ) 
           ) 
           Third-Party Defendant. ) 

Submitted: December 23, 2020
Decided: March 10, 2021

## DECISION FOLLOWING TRIAL

Adam L. Balick, Esq., Melony Anderson, Esq., Balick & Balick, LLC, Wilmington, Delaware, *Attorneys for Plaintiff.*

Charles J. Brown, III, Esq., Gellert Scali Busenkell & Brown, LLC, Wilmington, Delaware, *Attorney for Defendant.*

**JOHNSTON, J.**

# FACTUAL BACKGROUND

This breach of contract case stems from a commercial lease (the "Lease"). Defendant Coastal Station Development Co. ("Coastal Station") is the landlord. Plaintiff Iron Hill Brewery of Rehoboth Beach, LLC ("Iron Hill") is the tenant.

The purpose of the Lease was development of a property to house an Iron Hill Brewery restaurant. Coastal Station agreed to provide Iron Hill with a "vanilla" shell. Iron Hill agreed to build out the interior space. The Tenant Improvement Allowance was $1,657,500.

There were a number of issues with the construction process. Iron Hill elected to change architects after the Lease was executed. The new architect proposed certain changes to the construction plan. Construction was delayed so that these design modifications could be incorporated. The parties incurred extra costs as a result of the design changes. Iron Hill agreed to cover all increased costs.

### Iron Hill's Claims

Iron Hill claims entitlement to payment of:

(1)    The third installment of the Tenant Improvement Allowance ($828,750.00);

(2)　Reimbursement for work that was Coastal Station's obligation under the Lease, but that the parties subsequently agreed that Iron Hill would perform ($72,191.30); and

(3)　Credit for work performed by Iron Hill on the concrete slab and storefront ($115, 230).

*Coastal Station's Setoff Claim*

Coastal Station argues that it is entitled to a setoff claim totaling $351,718.10. Costal Station's claim is broken down as follows:

(1)　Building Permits - $6,054.60;

(2)　Plan Review Fees - $14,720.00;

(3)　EDU Fees - $94,128.00;

(4)　Concept Changes - $199,249.20; and

(5)　Architecture - Design Changes - $37,566.30.

## BURDEN OF PROOF

The burden of proof in civil cases is a preponderance of the evidence. "[T]he Court shall find in favor of the party upon whose side the greater weight of the evidence is found."[1]

---

[1] *D.W. Burt Concrete Constr., Inc. v. Dewey Beach Enters., Inc.*, 2016 WL 639653, at *2 (Del. Super.).

## ANALYSIS

### *Non-Disputed Claims*

Coastal Station does not dispute that Iron Hill is entitled to $828,750.00 for the third installment of the Tenant Improvement Allowance. Coastal Hill also does not dispute that Iron Hill is entitled to $72,191.30 for work that Coastal Station was obligated to do under the terms of Lease, but that Iron Hill completed.

Iron Hill does not dispute that Coastal Station is entitled to a setoff for building permits in the amount of $6,054.60. Iron Hill also does not dispute that Coastal Station is entitled to a setoff for Plan Review Fees in the amount of $12,800.

### *Disputed Claims*

#### *Concrete Slab*

Iron Hill asserts that it is entitled to $115,230 for work completed on a concrete slab and the storefront. Coastal Station does not dispute that Iron Hill is entitled to a credit for this work. However, Coastal Station disputes the amount and argues that the credit owed should be $90,320. After consideration of the briefs submitted by the parties and the testimony presented at trial, the Court finds that the evidence weighs in Iron Hill's favor. Iron Hill is entitled to the full amount.

*EDU Fees*

Equivalent Dwelling Unit ("EDU") fees are assessed by counties and municipalities to account for the impact that new constriction will have on existing infrastructure. Exhibit H-1 of the Lease requires Coastal Station "to pay all water and sewer tap fees, utility connection fees, impact or other fees regarding the building and premises." The Lease additionally provides:

> Tenant shall apply for and obtain the issuance of the required permits for the Tenant Improvements. Landlord and Tenant shall reasonably cooperate with one another in the application for and prosecution of all such permits and approvals. Tenant shall bear the cost of all required permits, together with such other architect fees, engineer fees, interior design fees, site supervision fees, utility fees, tapping fees, capacity charges, meter fees, inspection fees and dumpster rental and dumpster pull charges as may be necessary.[2]

Coastal Station argues that the Lease obligates it to pay the EDU fees associated with the "building," while Iron Hill must pay the EDU fees associated with the fit-out of the premises. Iron Hill claims that the Lease requires Coastal Station to pay all of the EDU fees because Exhibit H-1 specifically refers to the building "and premises." Both parties presented testimony as to how these Lease provisions should be interpreted.

---

[2] Ex. G-1, ¶ 3.

It is a well settled principle of contract interpretation that the Court must "read a contract as a whole and . . . give each provision and term effect, so as not to render any part of the contract mere surplusage."[3]  The Court finds as a matter of contract interpretation that as to responsibility for the disputed fees, Exhibit G-1 is more specific and Exhibit H-1 is more general. In cases such as this, the more specific contractual provision controls.[4]  Therefore, the reasonable interpretation of the Lease is that Iron Hill must bear the cost of all EDU fees associated with the "Tenant Improvements" portion of the structure.  Coastal Station's obligation is limited to the EDU fees related to the portions of the building and premises that are not part of Iron Hill's obligation.

The Court finds that Coastal Station is entitled to a setoff in the amount of $94,128.00 for EDU fees associated with Iron Hill's fit-out.

### Fifteen Percent Markup

Coastal Station's general contractor applied a 15% markup on invoices for permit fees and plan review fees. Coastal Station contends that the markup is

---

[3] *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *6 (Del. Ch.).
[4] *See Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.2d 836, 846 (Del. 2019) ("general terms of the contract must yield to more specific terms"); *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) ("where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one").

appropriate because the contractor's resources were involved in obtaining the permits and in connection with reviewing the plan. Iron Hill counters that there is nothing in the Lease that allows Coastal Station to charge a markup.

The Court finds that there is no basis for a setoff of the 15% markup. There is no evidence that the parties agreed to include any overhead percentage in any invoiced expense.

*Concept and Design Changes*

Coastal Station claims entitlement to a setoff for architect design changes in the amount of $37,718.10. Iron Hill concedes a setoff of $34,000. The remaining expenses associated with the concept changes are disputed:

(1)     Structural Steel - $98,880;

(2)     Exterior Finishes - $19,380;

(3)     Metal Studding - $14,040;

(4)     Carpentry - $16,680; and

(5)     Delay Damages - $50,269.20.

Iron Hill contends that the evidence Coastal Station submitted at trial is insufficient to support these charges.

Prior to trial, Iron Hill sought discovery concerning Coastal Station's alleged costs for "concept changes." The Court granted Iron Hill's Motion to Compel on

July 9, 2019. By decision on the record on August 22, 2019, the Court granted in part Iron Hill's Motion for Sanctions and required production of the requested documents by September 5, 2019. On October 22, 2019, the Court ordered that Coastal Station would not be permitted to produce any additional documents relating to its counterclaims. By Order dated September 18, 2020, the Court granted Iron Hill's Motion *in Limine* to strike the portions of Coastal Station's expert report that relied on unproduced documents, and to preclude the expert's testimony to the extent he relied on unproduced documents. In short, Iron Hill repeatedly sought discovery concerning the basis for Coastal Station's counterclaims and Coastal Station failed to provide any supporting documentation beyond a single invoice.

The invoice became Exhibit 12 at trial. It simply lists the amounts claimed for each item and the total amount. Exhibit 12 purports to be an invoice from the general contractor, MBM Construction, LLC ("MBM"). However, there are a number of discrepancies between Exhibit 12 and other MBM invoices submitted to the Court, such as those in Exhibit 50. First, Exhibit 12 lacks an MBM logo. Second, the format and font are completely different from the other MBM invoices. Third, Exhibit 12 is dated January 31, 2018, and yet includes charges for delays that Coastal Station's witness testified occurred between January and March of 2018. Fourth,

MBM's address in Exhibit 12 includes an erroneous zip code. Fifth, "Costal" is a misspelling in Exhibit 12 that does not occur in any of the other MBM invoices.

It appears to the Court that Exhibit 12 is not an invoice created by MBM under its usual business practices. Additionally, Coastal Station did not provide: (1) change orders for amounts above the original bids; (2) invoices from vendors or subcontractors; (3) cancelled checks; or (4) other evidence in support of the amounts claimed in Exhibit 12. It is also curious that Exhibit 12 contains a $37,566.30 charge for "Architecture – Design Changes (Becker Morgan)." The trial evidence demonstrated that Becker Morgan contracted directly with Coastal Station. Becker Morgan would have had no reason to bill Coastal Station through MBM.

Exhibits 28 and 29 are MBM's steel invoices totaling $202,000. Iron Hill adduced trial testimony that the design changes did not justify the $98,128 increase in steel cost. Other testimony confirmed Iron Hill's position that such a cost increase would have required MBM to issue a change order seeking approval of the additional expense. MBM had utilized change orders at other times during the construction process.

The Court finds that, with the exception of the conceded $34,000 in Architecture Fees, Coastal Station has failed to prove entitlement to any setoffs for the listed design and concept changes.

## CONCLUSION

The Court finds that Iron Hill has proved by a preponderance of the evidence that it is entitled to payment of:

(1)  The third installment of the Tenant Improvement Allowance ($828,750.00[3]);

(2)  Reimbursement for work that was Coastal Station's obligation under the Lease, but that the parties subsequently agreed that Iron Hill would perform ($72,191.30); and

(3)  Credit for work performed by Iron Hill on the concrete slab and storefront ($115, 230.00).

Coastal Station has proved by a preponderance of the evidence that it is entitled to setoffs for:

(1)  Building Permit - $6,054.60;

(2)  Plan Review Fees - $12,800.00;

(3)  EDU Fees - $94,128.00; and

(4)  Architecture Fees - $34,000.00.

Coastal Station has failed to prove entitlement to setoffs for:

(1)  Concept Changes - $199,249.20; and

---

[3]Less $549,223.20 that was paid by Coastal Station on October 5, 2018.

(5)     Architecture - Design Changes - $3,566.30.

Iron Hill is awarded prejudgment interest at the legal rate, accruing from July 15, 2018.[5]

The Court finds that there is not a single prevailing party.  Therefore, the Court declines to award attorneys' fees pursuant to the Lease.  However, the Court awards certain attorneys' fees to Iron Hill as a sanction against Coastal Station.  Coastal Station must cover the attorneys' fees that Iron Hill incurred in connection with Iron Hill's Motion *in Limine* to Strike Portions of the Expert Report of Michael Stortini and to Limit His Testimony at Trial.  Iron Hill's Motion was granted by Order dated September 18, 2020.

**IT IS SO ORDERED.**


　　　　　　　　　　　　　　　　　　_/s/ Mary M. Johnston_
　　　　　　　　　　　　　　　　　　The Honorable Mary M. Johnston

---

[5] 6 *Del. C.* § 2301.